So now we're down to $1.6 million, then what happens to that money? It goes to the secured creditors, right? If that's the rules, then that is the rule. Yes. And the drivers still get nothing? Correct. If there's nothing left in the estate. But it should be under... You see, that's one of my problems with this case, that we could write an opinion, giving guidance for future cases, we're talking about Iridium and things of that nature. And we could send it back, and we could ask the bankruptcy judge in the district court to take a look at it under the guidance we give in this opinion. But I think what I hear you saying is, at the end of the day, the result will be the same. It may be, Your Honor. It's difficult for us to try to recreate in some kind of ad hoc way what should be done under the Code. We think it's the better advice to let the Code do its job, because that puts pressure on appellees, on people in bankruptcy, to face a Chapter 7 problem and do something about it, like putting money into the estate or not. And that's up to them. And that is what causes settlements. That's what causes the system to work. If we take it apart... I'm sorry. This would be one of those ugly results that the trustee referred to, that one has to apply the Code, the priority rule of the Code, even though on occasion there may be an ugly result. Correct. Because in the larger picture, the fact that parties of bankruptcy face the cliff of Chapter 7 if they don't apply the Code creates mischief. And we, as plaintiffs, as creditors, cannot chase the mischief. We do not have the funds. We do not have the ability to rethink the Code and be a step ahead of everyone else. All right. Thank you, Mr. Raisin. We'll hear... Oh. Just one quick question. Is it correct that you did not want to participate in the settlement or you were completely barred from it? There was no evidence as to what happened, Judge Tureka. But the truth is that we were told that we had to give up our claims against some capital... The warnings. ...against everybody as the price of admission to have our bankruptcy claim be accorded its value to participate. That is not a requirement that someone has to pay to be a creditor in bankruptcy, to give up claims against other people outside of the bankruptcy sphere. That's... We participated to the extent that that was a bulwark type of take it or leave it. Thank you, Mr. Raisin. We'll see you on rebuttal. Thank you. Ms. Cox. Good morning. May it please the Court, I'm Wendy Cox. I'm with the Department of Justice and I represent the amicus, the United States of America, in this case. The United States briefed two issues in this case, just two. The equitable mootness issue and the issue of whether the bankruptcy court may confirm a settlement that does not... that distributes assets in a way that does not comply with the Code's priority scheme. The United States is prepared to stand on its brief with respect to the equitable mootness issue unless there are any questions. I should have asked Mr. Raisin why he didn't seek a stay. I have no questions. Okay. Then... I... You put that first. I found that curious you inverted the arguments. Is that a sign that the equitable mootness argument is of more concern institutionally to your office than the other argument? Well, I think they're both of great concern to our office but the equitable mootness argument is of great concern to our office. We've made an argument. We've tried to get that argument before the Supreme Court but they haven't taken it before. We really feel that if the equitable mootness doctrine is expanded in any way, shape, or form it not only deprives appellants of their rights to appeal their statutory rights to appeal but it also has the effect in bankruptcy of really strangling the development of binding appellant precedent on important, and here you can see recurrent, bankruptcy issues. Well, our some crude opinion just in 2013 made it very clear how rare it will be that equitable mootness will prevail as an issue. It was very, very strong. Absolutely, we agree and perhaps that's another reason for putting it first is that it seemed to be there seemed to be a very clear answer that this court's precedent has made it clear that it only applies to confirmed plaintiffs. to substantially consummated confirmed plaintiffs. Alright, well let's focus on the other issue. So turning to the merits. Let me ask you a question on the merits and maybe guide your argument but we'll hear whatever you care to tell us. The code doesn't prohibit structure dismissals but nor does it explicitly authorize them. So does this case come down to who has the burden here? Well, okay, I apologize. The government did not take a position on structure dismissals. We had a very tailored Well, but I'm asking your position now. Well, I can't I have to have authority from the Solicitor General to address issues on behalf of the United States. It has to be approved. It was enacted all over the country, the U.S. Trustees Office, in objective settlements that violate the absolute priority law and structure dismissals as I understand it. Well, as amicus, we felt that we were only able to raise a limited number of issues. We were restricted in what we could raise so we raised what we believed to be But you didn't appeal to the district court, right? In this case, we did not So I guess we should take that as a signal that your office was okay with the baggers? No, I strongly disagree with that. We have very good reason for not appealing. It was really a question of prosecutorial discretion. We didn't appeal because we had a very similar case raising substantially identical issues before the same court at the same time. Don't you have to get permission to appeal an issue? Wouldn't you? Not at the district court level. Not at the district court level. What about to us? Yes. But you haven't appealed it to us. We also have to get permission from the SGA to appear as amicus to appear as amicus before your court. So our argument actually is very straightforward based on the text of the code. So as this court permits, the creditors committee was litigating estate claims on behalf of the estate. The claims didn't belong to the creditors committee. They didn't belong to any of the individual creditors. So when it settled those claims, the proceeds of the settlement had to come into the estate. And when they came into the estate, if they were to be distributed, they had to be distributed in accordance with the code's priorities. Where does the code say that? Where does the code say that when parties in a Chapter 11 case reach a settlement, the proceeds of that settlement must be distributed according to Section 507? The code doesn't say that expressly, but it doesn't have to, because Section 507 says that certain claims will have priority. They have priority in payment of when estate assets are distributed. So you're saying that the $3.7 million had to be assiduously distributed in accordance with Section 507? It was. Yes. Okay. Then in this bankruptcy, who were the most senior creditors? The most senior creditors. Well, there were secured creditors, and then there were priority creditors. So the secureds are the top of the food chain here, right? But they gave up their right to those. They gave up the right, their encumbrances, their liens on that money in return for the estate giving up its claims against them, for giving them releases. There was a tit-for-tat. It was consideration to the estate for something that the estate gave up. So the money became the estate's money, and then it had to be distributed. It couldn't be distributed to creditors with no priority when creditors that were guaranteed priority by Section 507 were getting nothing. That's not something that's subject to equitable considerations. That's not the code. That's clear from the code. Section 103 says that Section 507 applies in Chapter 11, and Section 507 sets out specific priorities for distribution of estate assets. The court was not at liberty to apply equities to them. If that's clear, then why would the creditors' committee council approve this settlement? Are you saying it was a breach of federal duty to even enter into a settlement of this nature? I think there was sort of an undue focus or a conflation between Section 1129, which sets out a somewhat different absolute priority rule as applies to plans. And they looked at that, and they said, if they said, well, 1129 only applies to plans, it doesn't apply to settlements. What do you want us to do? I mean, you're not appealing here because you can't. You're an amicus. What do you, the U.S. trustee of the United States Department of Justice, want us to do? We would like you to reverse the order approving a settlement that violates express code provisions and send a signal to parties that they can't basically administer and distribute assets and do everything through a settlement, and then say, well, these code protections don't apply because it's a settlement and not a plan. What happens as a practical matter here in this case? Well, I don't think we know for certain. I think that the case would be remanded back to the bankruptcy court, and then the parties would... Then it goes to a 7. It might go to a 7. Why would you say it might? What did the bankruptcy judge find about that? The bankruptcy judge found that the case would not likely go to a 7. It wouldn't be feasible on a 7. The bankruptcy court found, as a matter of fact, there's no confirmable plan. It's going to a 7. There's $1.7 million that the trustee in the 7 has, and that $1.7 million is secured by the $50-plus million in secured creditors, so that there's no money to fund. The only real asset of the estate, correct me if I'm wrong, is the chosen action to pursue the LBO litigation, right? Right. And the bankruptcy judge found, as a matter of fact, that that wasn't a viable claim, but even if it were a viable claim, there was no money to prosecute that claim. So then what happens? Are you suggesting that any of those findings by the bankruptcy judge are clearly erroneous? No, but I don't think that equities matter where the statute is clear. They're not equities. These are facts. These are factual findings. Are they clearly erroneous fact findings? We're not arguing that the factual findings are clearly erroneous. What we're arguing is that where the code clearly prohibits what was done in the settlement, the only way to deviate is if the code itself expressly provides some authorization to deviate. So we're back to a black-letter rule of law, a very straightforward holding that says structured dismissals are not allowed unless they adhere in an exacting way to the priorities listed in Section 507. Well, I would say perhaps not structured dismissals per se because, as I said, we didn't quite go that far in our brief, but distributions of estate assets can't be allowed in settlements unless they comply with 507. So there can never be a settlement then that doesn't adhere strictly to the 507 priorities? Correct. Okay. Thank you, Ms. Cox. Mr. Landau? Thank you, Your Honor, and may it please the Court. I'm Chris Landau, and I'm here this morning on behalf of the affilies. I'd like to start with the point that Judge Sirica made or asked, the question that Judge Sirica asked my opposing counsel. What on earth was the bankruptcy court supposed to do given these conceitedly unusual circumstances? And then pick up on the point that Judge Hardiman just made, which is there's three points here that are really undisputed that you take as a given. They're factual findings that are not seriously contested. First, there was no confirmable plan in Chapter 11. Second, conversion to a 7 was not a feasible option because that was a long-shot claim and no lawyer would have taken it on contingency. So what would have happened upon conversion to a 7 was a short order distribution of all the money to the secured creditors, Sun and CID, and the warrant claimants would have wound up with nothing in that alternative scenario. The court had a hearing on it. Why not go through that process? Well, Your Honor, again, as the court decided, the court had a hearing on this. And if there were some potential merit in that process, the court then, you know, that was the subject of the hearing, Your Honor. And the court decided, I think quite reasonably on this record, that, you know, he actually had a comment, you know, what would the trustee do if I dumped this case on him or her with no lawyer, no money to fund the litigation, and just said, here, you deal with this. But just because it might make no economic sense doesn't mean it's not required under the law. Well, that's correct, Your Honor. And you've got this dicta from the Supreme Court that's supportive of their position, isn't it? I disagree with that, Your Honor. I mean, it seems to me, going back to the TMT trailer ferry case in the 60s, it is quite clear that the code does not speak to settlements. The code doesn't say in settlements this and that will happen. That was the issue in TMT trailers in the late 60s. How do you deal, what is the criteria for evaluating a settlement under the bankruptcy code? And the code doesn't speak to this. So the Supreme Court said you have to look at kind of equitable factors. That's what this circuit has called the Martin factors, those equitable factors. Now, under the government's view that the code specifically speaks to that, the Martin factors go out the window because there is no Martin equitable balancing. There is no looking at the claim that was given up. You've just got to apply the code in a mechanical fashion. Well, let me ask you a very basic question. Why was this case filed under Chapter 11 in the first place? Chapter 11, as you well know, is entitled Reorganization. But in May, what was it, 2008, when it was filed, Chevick was already well into winding down. They had already terminated 1,800 truck drivers. Why, it was well on its way to liquidation before it even filed in May 2008. Yes, Your Honor. I asked that exact same question when I got into the case. It's a good question. It's a very good question. And the answer, Your Honor, is that was given to me by my bankruptcy colleagues who do this day in and day out, is that you want to preserve, you want to maximize the value to the state under the code. And that they have found that doing a Chapter 11 maximizes value as opposed to going the 7 liquidation route. And liquidation is a viable option under Chapter 11. You can have a plan of liquidation under Section 1123, and it's actually, apparently, this somewhat came as a surprise to me given the title of the chapter that you just read, Your Honor. There is, you know, Chapters 11, Plans of Reorganization, apparently are not that uncommon. And I did some looking online, and I found that courts, you know, the Second Circuit just recently dealt with equitable mootness in the context of a Chapter 11 plan of liquidation. So that's the, I mean, I think that's the answer that was given to me, that this was perceived as the better route. But when the parties appeared in November 12th before the Bankruptcy Court to approve the settlement, at that point, there was no prospect of a confirmable plan? Correct. And there's a factual finding on it. I don't believe that that's disputed here today before you. I understand that. I just don't know why, when it became clear at the very outset, in my view, that this was not really a reorganization, that Chapter 7 wasn't filed. As soon as it became clear that the plan could not be confirmed. Your Honor, again, I'm giving you the pragmatic answer that I was given about maximizing value. And again, that specific issue about filing under Chapter 11 in the first instance has never been raised as a point of error in these proceedings. As these proceedings arrive here, we take the case as it comes, which is it was a Chapter 11 case. So again, the alternatives were a Chapter 11 plan, everybody agrees that's off the table, Chapter 7 conversion, and I think... But there's another alternative. Why wouldn't it have been more fair and equitable and more consonant with the structure of the Bankruptcy Code to require the following? Take the $3.7 million and distribute it to the tax creditors, to the 1,029 trade creditors, low-priority creditors, and to the drivers. Some sort of pro-rata distribution in accordance with their relative positions under 507. Right, that was the third point I was going to make. In other words, the three kind of predicates here are no Chapter 11 confirmation, no Chapter 11 plan, no Chapter 7 liquidation that would be feasible, and no better settlement. Because, as I think... There was a better settlement, it's just that CIT and SON were insisting that the drivers get nothing unless they give up their Warren Act claim. Again, the way a settlement works, everybody gives and takes a little bit. And the SON and the drivers... Again, there was a colloquy earlier about, did they participate? They kind of said, oh, we were shut out. There's factual findings in both the district court and the bank's report that that's not true. They were not shut out. They participated in negotiations, but ultimately decided, which is their right, that they don't want to cut a deal like other priority creditors did. I thought the charge was that they wouldn't have contributed any money unless the Warren people were shut out. No. No, no, no. That's not the charge. The charge, Your Honor, was they would not have agreed to a settlement that funded the Warren plaintiffs if the Warren plaintiffs were going to continue to litigate against SON. All right, and the Warren action's over. You won. Well, no, but... So why don't we remand it for some sort of reformation of the settlement that now puts some money in the drivers' pockets in accordance with their priority? Well, Your Honor, again, you are reviewing a settlement that was entered into before we won that. That was decided subsequently, and that appeal is pending before this court right now. It was just recently filed, and we just got a briefing schedule, I think, last week. So that appeal is not over yet. But again, what you are reviewing is whether the bankruptcy judge abused his discretion in approving the settlement under the facts as he knew them at the time. If that were the main fact to him, was these are dire circumstances. Exactly. Well, yes, but question. Couldn't it be argued that CIT and SON created the very circumstances that led the bankruptcy judge to that conclusion because they sold all the property? They sold everything. Well, Your Honor, again, but nobody's saying that they did anything wrongful here. That's not a... Well, I mean, maybe it's not wrongful, but there's a smell test, isn't there? I mean, in a way, and then, you know, I don't know. I mean, because of what they did, we are in dire circumstances. But that goes to the question that was presented to the bankruptcy court in the first instance in applying the Martin factors. If somebody says, look, there's something fishy going on here, that's very important under the Martin factors. The bankruptcy court didn't find that anybody did something... I'm just asking the question. No, no, fair enough. It's an innocent question. No, no, fair enough, Your Honor. I'm sorry if I... How did they get to this point where the circumstances were dire? Why was there no money laundering? Well, because they had a very secure creditor. They had CIT, which had the top security, and when a lot of the assets of the debtor were being liquidated and sold off, that money went to CIT. That money would not have gone to the warrant plaintiffs anyway. Again, that's just the way the system works, that, you know, the people with the most security are the first in line. And let me make one point absolutely clear. We have no quarrel with the general approach of the Iridium case. It seems to me the Iridium case in the Second Circuit is actually fully consistent with what happened here. Was it followed here? I believe it was followed, yes, Your Honor, because what... No. Well, I mean, the Iridium court says in all but exceptional circumstances that you have to follow... You have to give weight in the Martin factor analysis. And, you know, we may not go quite as far as Iridium, saying, you know, it's usually, it's very heavyweight, but we don't disagree with the general notion. It said the most important factor, and in most cases a dispositive factor, is noncompliance with the absolute priority scheme. And it says only when the remaining factors weigh heavily in favor of settlement. And I think here... You're not trying to upset that standard. And the absolute priority violation is a very minor violation. Only then, only then will the settlement be approved. Well, I'm not sure what it says, minor? It does. Okay. To endorse the settlement if in some minor respects it does not comply with the absolute priority rule. If the parties justify it, and the court clearly states its reasons for deeming... Right. I don't see any clear statement here, if you say you don't have any problem with Iridium, that the bankruptcy judge has done that. Put it this way, Your Honor, I don't necessarily want to say every last word in that statement that Your Honor just read. I said... The point I was trying to make is the more general point that the government here and the other side, to be exact, is making a perfectly valid general... Raising a perfectly valid concern that you don't want a system... You don't want to create the possibility for abuse when you have a settlement that in a way rejiggers things, that you then move on to a plan. In a sense, the settlement has monkeyed with the priority factors that would then have to be followed in the plan. I think what is critical in this case is that this was not a settlement that was a precursor to a plan, because there's a finding here that no confirmable plan... All right, that might be significant, but isn't it even more significant that the court, the bankruptcy court, found that the drivers weren't going to receive anything anyway? Yes. All right, so then what I hear you saying is you don't challenge the Second Circuit standard that priorities are the most important consideration, often dispositive, and only in exceptional cases should this be allowed. You're saying here we are with the exceptional case... Correct. ...and the bankruptcy judge so found. Correct. All right, but the question then becomes, what's the rule? How should that be articulated? Do we open the door to sub-ROSA plans? Well, I think that's a legitimate concern. We agree. But again, a sub-ROSA plan presupposes, in a sense, that you are using the settlement as a way to evade the requirements for a plan. You can't have a sub-ROSA plan if there was no ultimate plan that you are circumventing or trying to evade. I think that's the point. In other words, there's no evasion under these cases. I think your honors can... It's a little bit hard to have, I think, a one-size-fits-all absolute rule here. That's why I asked the spell-test question about this really never was a Chapter 11. This was a liquidation from the outset, from the filing. But even if it were a liquidation, you could have a settlement in Chapter 7. Wouldn't it have gone to Chapter 7 right away? It didn't. Again, for whatever reason, your honor, it didn't, and so we're in this world, and again, we're in the Martin Factor world. There is a threshold legal issue which the government has teed up, which is, does the priority system of 507 apply to settlements as a matter of law? We submit that the answer to that clean legal question is no. Going back to Martin and the... Wait, wait, they apply. They're just not mandated. Fair enough, your honor. Because if I'm a bankruptcy judge, the first thing I'm going to look at is, how does this settlement sitting on my desk fit in the scheme of the priority system? You're absolutely correct, your honor, and I'm sorry if that was not clear. What I meant to say is, is the application of the priority system mandatory in the context of settlements like it is in the context of the plan confirmations under 1129 in the Chapter 11 context or in liquidations under 726, Section 726 in the Chapter 7 context. So should we adopt a rule then that says, the extraordinary circumstances have to be so extraordinary that the fact finder, the bankruptcy judge, has to determine that the creditors who are being skipped, here are the drivers, would have received nothing. So in other words, it's a no harm, no foul rule. Plain error. Right. That by preferring these low-level trade creditors, we haven't taken a penny out of the pocket of the creditors who are prior to them. Right. Should that be the rule? I don't know that you need to say never, that you always must have that situation, but here where you have that situation, I think there's no question that it's okay. In other words, I think you are marking out one end of the spectrum with this case, where in fact what you just said is true. Whether or not this is the only circumstance you would apply it, I don't know that you need to or should, in this case, announce the rule that is broader than that. That's obviously the way the opinion gets written. I think it is hard to imagine many scenarios when you have a scenario where somebody, actually there is some possibility for recovery from then, when it's possible to bypass the code. I guess it's hard to think about all the possible scenarios. I mean, bankruptcies come in so many different shapes and sizes. It was contested back then. It's not as if they were contesting it. Well, yeah. It's not as if all the parties agreed to a settlement. No. That's fair. But then there was a hearing, exactly as your Honor said, on November 13, 2012, everybody came into the bankruptcy court, and there was a hearing, and there were witnesses, and there was cross-examination on, look, what would really happen? And I think this goes back to the point you raised, Judge Sirico. What would be the harm of just sending it to Chapter 7? Wouldn't that kind of make it go well with the code? Well, the court found there would be significant, you would continue to deplete the estate, you would dump something on the trustee, and the court at some point has to make a finding of what's likely to happen. And Chief Judge Shannon is a very seasoned bankruptcy practitioner, and I think he made a very reasonable finding under these circumstances, that these folks, in a sense, are only acting as spoilers, because they're not going to get any better off. The warrant plaintiffs aren't going to come out any better. All they're going to do is prevent a distribution that hurts other unsecured creditors who actually get something out of the settlement. They're paying it forward to future drivers, or people in similarly situated. That's sort of, right? I mean, it still might be an important principle of law to establish even if the drivers don't get it. Right, but again, I think, you know, it seems to me, once you... The important legal question here is really the one that the government presents, and I think they are just wrong as a matter of law to say that the code operates the same with respect to settlements, that the 507 factors by their terms, the section 507 priorities, excuse me, by their term apply rigidly to settlements, and a settlement must apply those factors. That's inconsistent with the law going back to the TMT case in the Supreme Court. Once you're out of there, then you're in Martin factor. Well, but wait a minute, wait a minute. Because in TMT, I'm going to quote what the Supreme Court said there. The requirement that plans of reorganization be both fair and equitable applies to compromises just as to other aspects of organizations. This standard, the fair and equitable standard, incorporates the absolute priority doctrine under which creditors and stockholders may participate only in accordance with their respective priorities. How do you get around that? Well, the way that has been played out, and certainly in this court's Martin factor, and again, it can incorporate that, and we don't deny that in applying the Martin factors, in applying the equitable standard, the priority rule is a very important consideration. Again, I think that makes sense. You don't want to have settlements being done as a way to evade the priority system. Totally fair point. You don't want to open the door to abuse. But that doesn't mean that the priority system rigidly applies ipso facto by its own terms in the context of a settlement. You have a more equitable discretion. And that's why the Martin factors don't say, the first thing you do is you apply the code no matter what. See, the priorities are not even in the Martin factors as they were articulated, although we think it is certainly fair, as other courts have done, to say as part of looking at the interests of the creditors under the fourth factor of Martin, it's very important to understand why there is any deviation from the priority system and to justify that. And I think it's fair to say there should be a pretty heavy burden of justification. I just think under any circumstances, that burden was satisfied in this particular case. Let me ask you about equitable mootness. Am I correct in assuming that it's not essential to your argument that the district judge didn't have to use that? Or is it an integral part of your argument? It's not essential. There was an alternative ground to say, look, I think these folks are right on the merits and the appeal to reaffirm the merits. In the alternative, I would find that this is equitably moot. Primarily, I think this goes back to a point Judge Barry raised before, and maybe she'll ask counsel on rebuttal, why they didn't seek a stay. To this day, they have never explained why they didn't seek a stay. But so anyway, the short answer to your question is we don't rely on equitable mootness. We think it provides an alternative ground. We think this is a fairly compelling case. Even though it does not involve confirmation of the plan? Yes, Your Honor. In fact, I'm glad you raised that. Because one case, in preparing for this argument, a very recent case just came out from the Second Circuit, which canvases the equitable mootness doctrine as it applies to liquidations, as opposed to just confirmed plans. And it's the BGI case at 772 F3rd 102, and the discussion's at page 109. And again, that came out after the briefing and this case was concluded. But that case applies equitable mootness to actually a Chapter 11 liquidation proceeding and says in the course of that that equitable mootness has also been applied in the context of Chapter 7 liquidations. It's not only... I mean, certainly the considerations underlying equitable mootness are very relevant in a Chapter 7 confirmed plan. But they're not limited only to that. But our Third Circuit law on equitable mootness doesn't support that principle. Well, Your Honor, with respect, I don't know that this court has actually specifically crossed that bridge in this one, I think it was an unpublished decision, Athanasios, that the other side cited. There's a footnote that says it is questionable whether equitable mootness applies in the context of liquidations under Chapter 7, but we haven't yet reached that issue. So on the merits you're telling us then that the fact that there's not a confirmed plan makes all the difference, but on equitable mootness you're saying to disregard that. Well, Your Honor, I mean... Well, can you seriously argue that you don't, you aren't going to mention it, I think. The reason, and my reason that I suggest, is that the District Court dealt with it in one paragraph, one paragraph. Right. No case citation, no cites to any of that, just one paragraph conclusion. Yes, I mean... And that is not the way an equitable mootness case should be treated. Your Honor, again, going back to my answer to Judge Sirica, we do not rely, equitable mootness is not critical to our prevailing here. We think we have very strong arguments that this was correct on the merits, and that, again, under the unusual circumstances of this case, the Bankruptcy Court acted well within its discretion in approving the settlement. If there's no further questions, thank you. Thank you, Mr. Landau. Rebuttal, Mr. Raisman? Thank you, Your Honors. Your Honor's questions ripped back the veil and disclosed what is actually going on here. My colleague said he looked online for the answer to why this case did not convert, that Judge Barry asked. But every bankruptcy practitioner knows why a fourth option was invented to allow for this escape with a structured dismissal. It is to have what's called a soft landing for some capital, for CIT, and for those financiers. They don't want to be sued for the things that they did that led to the fact that this company had nothing in its coffers. They don't want the claim to go forward that met the requirements of a motion to dismiss that accused them of... But they didn't get a soft landing on the Warren Act. I mean, your clients, you know, vigorously prosecuted that. It's still being vigorously prosecuted. They asked for it. They didn't get it. Because we stood up to the threat. But it's been used against us. So you're not prejudiced. You're going full bore with your Warren Act claims and maybe you'll get a big recovery. We're prejudiced in every bankruptcy where we're told by the financiers, give up your Warren claims outside of this case or you're getting nothing in this bankruptcy. That is now the threat to us and it's been used based on this case and it will be used throughout the country. And that's... To intimidate. That's why the structured dismissal is a source of debate about whether Congress should do something about it one way or the other. Absolutely. Give some guidance. The whole checks and balances of the bankruptcy structure forces the... Confirm a plan or go to the seven. That's where you're going to get your hard landing. To create a soft landing induces private equity in financiers to do whatever they want with the company knowing that as long as they deplete all the coffers and go into a bankruptcy, then the judge will say, well, I guess a structured dismissal for the tip that you leave the creditors committee is a good idea. All right, but let me give you a counterfactual. What if the bankruptcy judge had found that the LBO case had some real merit to it? And I assume for that case to have had merit, that would mean that Sun and or CIT did some things wrong in conjunction with the LBO and the financing of the business, right? He made the finding that a motion to dismiss was brought, hard fought, and found that this met the standards for such claims. They were viable claims. So the only ruling is that they were a viable claim, Your Honor. Well, it was viable in passing motion to dismiss, but then he later found, I think he used the phrase, a lawyer who would take this case on a contingency would have to have his head examined. That's an economic decision of a contingency lawyer, and that's a prediction. And you could have, right, and I know I don't want to beat you up on this, hindsight's 20-20, but it wouldn't have been too difficult to put a couple of contingency plaintiff's lawyers on the stand in the hearing. You had an opportunity to be heard, and that was the time to tell this bankruptcy judge do not be fooled. This LBO action is worth something. So don't sell us out on the cheap here because this action is really worth something, and here are a couple of lawyers who are going to explain to you how much it's worth. Like the million-dollar bond, to have taken the equitables to the next level of a state. To impose on a creditor in a bankruptcy who doesn't have the lawyers paid by the estate to compete on the stand to prove why they should not lose their claim in a structured dismissal is imposing too much. You don't have to pay them. Go ahead. How much significance do we give to the fact that the debtor-in-possession financing order gave standing to litigate this issue? Is that... It's still the complaint of the estate. It's the property of the estate, that claim. The proceeds from the settlement were all the property of the estate. Is that Your Honor's question? It seems to have some significance, but I don't know how far it extends. To the extent of which conclusion, Your Honor? Well, supporting your position. Well, it supports the position that this is not a gifting matter. The basis of the bankruptcy and district court's decisions in this case were based on something called gifting, not the arguments that have been brought here. These are heard for the first time. Those gifting arguments basically were disposed of and a new set of arguments have been presented. I don't say they're waived, that there should be a waiver here. But I think we properly understood that this was not a gifting case, and we litigated that, and we seem to have achieved that. Did you answer the stay issue? We brought the stay in the first instance, and we lost it. We didn't bring it to the district court because the bond was a million dollars. Yes, we brought it and it was denied. So we were unable to obtain it, just like the six big cases since Continental that have been all allowed to be appealed without a medical mootness. Not one of those cases was a stay obtained. Well, you didn't bring it in the district court. You didn't seek a stay in the district court. That's right, because we didn't have the means to do that. That was the reason. My question would have been, had I had to, why didn't you? You just answered it. It's oppressive, and it would have been fueled. What do you want us to do? I mean, we've heard a lot of argument, and you've been wonderful, and I'm sorry if I've made people a hard time, but just at the end of all of this, what is the relief you're seeking here? Your Honors, we are simple folks. This case should go to a Chapter 7 trustee. We can't undo the fact that there isn't a nice landing for anyone there that was all ordained by the secured creditors in this case. So this is not the case for us to be able to figure out how closely should a structure dismissal hug the shoreline of the bankruptcy code for it to be valid. We just know that it is too oppressive and expensive and impossible for us to design such a system safely, because once you have a rule, the professionals will find a way to engineer around it. So it's better to have the rules as they were written by Congress, how they've been applied and have been effective in forcing parties to do everything possible to avoid a Chapter 7, and if they go into a Chapter 7, the trustee will take over. That puts the pressure on the parties to do the right things, accomplish the goals that Congress set forward, makes this code work, makes for a stable set of rules that people can count on and negotiate against in bankruptcy. Otherwise, we have opened a Pandora's box of chaos, and we know who's going to win in that battle. Thank you, Mr. Reisner. The panel is grateful to counsel from both sides for the truly outstanding briefing and argument. Thank you. We'll take the matter under advisement.